### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLORADO
### Judge Robert E. Blackburn

Civil Action No. 13-cv-02757-REB-MJW

TIMOTHY C. JORDAN,

    Plaintiff,

v.

DILLON COMPANIES, d/b/a KING SOOPERS, INC.,

    Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**Blackburn, J.**

The matter before me is **Defendant's Motion for Summary Judgment** [#29],[1]

filed September 19, 2014. I grant the motion and dismiss plaintiff's claims for

discrimination and retaliation under Title VII.[2]

### I. JURISDICTION

I have jurisdiction over this matter under 28 U.S.C. § 1331 (federal question).

### II. STANDARD OF REVIEW

Summary judgment is proper when there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law. **FED. R. CIV. P.** 56(a);

---

[1] "[#29]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

[2] The issues raised by and inherent to the motion for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument. Thus, the motion stands submitted on the briefs. *Cf.* ***Geear v. Boulder Community Hospital***, 844 F.2d 764, 766 (10th Cir.) (holding that hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties), ***cert. denied***, 109 S.Ct. 312 (1988).

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994). A fact is "material" if it might reasonably affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Farthing*, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine fact issue. *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994), *cert. denied*, 115 S.Ct. 1315 (1995). Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. *Id.* at 1518. All the evidence must be viewed in the light most favorable to the party opposing the motion. *Simms v. Oklahoma ex rel. Department of Mental Health and Substance Abuse Services*, 165 F.3d 1321, 1326 (10th Cir.), *cert. denied*, 120 S.Ct. 53 (1999). However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence. *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir.), *cert. denied*, 120 S.Ct. 334 (1999). However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence. *Id.*

### III.  ANALYSIS

Plaintiff's claims for sex discrimination and retaliation under Title VII arise from the termination of his employment in March 2012.  At the time of his termination, plaintiff was employed as a Butcher Block clerk at King Soopers Store #63 in Centennial, Colorado.  His immediate supervisor in that position was the head of the meat department, Molly Gannon.  Debbie Villareal managed the seafood department.[3]  Scott Brinson was the store manager of Store #63.[4]

Plaintiff ties his claim of sex discrimination to Ms. Gannon.  He claims Ms. Gannon stated that she did not like working with men and would flex her muscles in a way which plaintiff took to mean that she did not need men to help her.  (**Plf. Resp. App.**, Exh. 2 at 301-302, 316-317.)  As evidence of her alleged bias, plaintiff claims that, despite his seniority, Ms. Gannon gave preferential treating in the scheduling of hours and duties to a less senior female co-worker, Dana Rock.  For example, plaintiff notes that Ms. Gannon denied plaintiff's request for a Saturday off because she already had approved Ms. Rock's request to be off that same day.  (**Def. Motion App.**, Exh. A at 110 & 200; Exh. C at 47-48; Exh. D at 95-97.)  Plaintiff also points to an incident in which Ms. Gannon asked him to clean the seafood case when he arrived for work on a Thursday morning, even though that job was regularly scheduled for Wednesday night, when Ms. Rock worked.  (*See* **Plf. Resp. App.**, Exh. 2 at 242-243; **Def. Motion App.**, Exh. A at

---

[3]  The meat and seafood departments at Store #63 physically abut one another and share employees.

[4]  Although Ms. Gannon and Ms. Villareal had authority to discipline employees short of termination (with input from an assistant store manager), only a store manager or assistant store manager could fire an employee.

110-111; Exh. D at 102.)  Plaintiff complained to Mr. Brinson that Ms. Gannon was demonstrating "blatant favoritism" in reassigning this duty.  (**Def. Motion App.**, Exh. A at 110-111.)  In both these instances, Mr. Brinson addressed plaintiff's complaints, giving him the days off he requested and absolving him of responsibility for cleaning the seafood case.  (*See* **Def. Motion App.**, Exh. A at 244; Exh. C at 75, 109.)

In January 2012, Ms. Gannon and Ms. Villareal complained to Mr. Brinson about plaintiff's workplace behavior, stating that plaintiff talked down to them, failed to follow their directions, and told Ms. Gannon that she did not know what she was doing.[5]  (**Def. Motion App.**, Exh. C at 66-67, 82-83; Exh. E at 3-4.)  In addition, Ms. Gannon submitted written statements claiming that plaintiff used vulgar language and made inappropriate sexual comments to her and others in the department.  (**Def. Motion App.**, Exh. E at 3-4.) Plaintiff was counseled as a result of that complaint:

> Today we had a discussion with Tim Jordan concerning recent and old allegations that have been made in regards to Tim arguing and making inappropriate comments to fellow employees as well as department management.  We covered Tim's entire employee file and stressed that these issues have been ongoing since he started his employment with King Soopers.  Tim was put on notice today that any further issues with harassment may result in immediate termination.  Tim was given the harassment policy and Tim did read the policy and sign off on it in my presence.  Tim did admit that he had anger issues and Tony Daymil did offer our employee assistance program.  Tim denied [*sic*] even taking the phone number.

(**Def. Motion App.**, Exh. E at 2.)  However, he received no formal discipline.

In the context of that same meeting, plaintiff reported to Mr. Brinson that he had

---

[5]  Plaintiff suggests that Ms. Gannon complained to Mr. Brinson about him "numerous times." The evidence to which he points, however, involves this single complaint, encompassing a number of different past incidents. (*See* **Def. Motion App.**, Exh. E at 2-4.)

4

issues with Ms. Rock because he refused to date her.[6] Subsequently, Ms. Rock submitted a written complaint to Mr. Brinson, stating that plaintiff was verbally and mentally abusive, that he spoke to her in a "snide and condescending" way, and that he created "chaos and stress" in the department. (**Def. Motion App.**, Exh. C at 69-70; Exh. F at 14-15.)[7] In response, Mr. Brinson reviewed defendant's harassment policy with both plaintiff and Ms. Rock, but took no disciplinary action against either of them.

The incident that gave rise to plaintiff's termination occurred on March 16, 2012. Ms. Rock arrived for her shift that morning and began setting up the seafood case. Approximately two hours later, as she was finishing, Ms. Rock went to throw some items in the trash can behind the seafood counter and noticed a knife sticking point up in the can. The knife was wrapped in butcher paper with the tip exposed. Ms. Rock immediately alerted Ms. Gannon, who in turn informed Mr. Brinson.

Mr. Brinson was responsible for investigating the incident.[8] Although he received a statement from Ms. Gannon suggesting that the knife "looked like it was placed there intentionally" (**Def. Motion App.**, Exh. E at 12), neither Ms. Gannon nor Ms. Rock suggested that it was plaintiff who had placed the knife in the trash can, intentionally or otherwise (**Def. Motion App.**, Exh. C at 150). Working backward from the point at which

---

[6] Ms. Rock countered that plaintiff had started this rumor after she threatened to report him for sexual harassment. (**See Def. Motion App.**, Exh. E at 5.)

[7] Ms. Rock further informed Mr. Brinson that she had filed an earlier complaint alleging that plaintiff made sexually inappropriate comments to her and threatened to "take her down." (**See Def. Motion App.**, Exh. E at 5-6.)

[8] Plaintiff attempts to suggest pretext in the fact that defendant's loss prevention unit, which maintained the surveillance video Mr. Brinson reviewed, did not conduct the investigation. However, there is no evidence to contradict Mr. Brinson's testimony that loss prevention was responsible only for pulling the video, not for investigating incidents of this nature. (**See Plf. Resp. App.**, Exh. 3 at 16-17; **Def. Motion App.**, Exh. C at 120-121.)

Ms. Rock found the knife, Mr. Brinson reviewed surveillance video of the seafood counter. He determined that the video showed that plaintiff, while cleaning the prep sink the previous evening, had scooped up a handful of butcher paper containing the knife and tossed it in the trash. (**Def. Motion App.**, Exh. C at 125.) Mr. Brinson asked for a second opinion from loss prevention department, which confirmed this interpretation of the video. Mr. Brinson then informed labor relations and his own superior of his findings, both of whom confirmed that the safety violation was severe and warranted termination. (**Def. Motion App.**, Exh. C at 128-129.)

      Finally, Mr. Brinson spoke with plaintiff. Plaintiff denied putting the knife in the trash can, but also stated that he did recall picking up a knife, as well as more than one layer of butcher paper, while cleaning the prep sink and throwing the paper in the trash. He stated that if he was responsible for the knife being in the trash, he did not put it there intentionally. (**Def. Motion App.**, Exh. E at 13.) Mr. Brinson found plaintiff's explanation suspicious, noting that it was plaintiff who initially asked if the knife had been wrapped in butcher paper, a detail Mr. Brinson had not divulged to him at that time. Mr. Brinson further noted plaintiff's failure to acknowledge his role in the incident or fully accept responsibility, which he found "consistent with other discipline issues Tim has had at several stores. Tim never is in the wrong and blames his co-workers." (*Id*, Exh. E at 7.) Mr. Brinson terminated plaintiff's employment on March 23, 2012. This lawsuit ensued, alleging claims for sex discrimination and retaliation under Title VII. I consider these claims *seriatim*.

      Under the familiar burden-shifting analysis of **McDonnell Douglas Corp. v. Green**, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), plaintiff first must

6

establish a prima facie case of discrimination.[9]  The prima facie case requires plaintiff to prove that (1) he was a member of a protected class; (2) he was qualified and satisfactorily performing his job; and (3) he was terminated under circumstances giving rise to an inference of discrimination.  **Barlow v. C.R. England**, Inc., 703 F.3d 497, 505 (10th Cir. 2012).  In a reverse discrimination case such as this one, however, where "the presumptions in Title VII analysis that are valid when a plaintiff belongs to a disfavored group are not necessarily justified," the plaintiff "must, in lieu of showing that he belongs to a protected group, establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority."  **Notari v. Denver Water Department**, 971 F.2d 585, 589 (10th Cir. 1992).[10]  Alternatively, a plaintiff may establish his prima facie case by "present[ing] direct evidence of discrimination, or indirect evidence sufficient to support a reasonable probability, that but for the plaintiff's status the challenged employment decision would have favored the plaintiff."  **Id.** at 590.

---

[9] Plaintiff suggests that this case should be analyzed as a "mixed motive" case.  **See Fye v. Oklahoma Corporate Commission**, 516 F.3d 1217, 1224-25 (10th Cir. 2008).  This rubric, however, is more properly characterized as an affirmative defense raised by the employer when the evidence supports an inference that an impermissible motive played a role in the employment decision.  **See Price Waterhouse v. Hopkins**, 490 U.S. 228, 246, 109 S.Ct. 1775, 1788, 104 L.Ed.2d 268 (1989), **modified by statute as recognized in Desert Palace, Inc. v. Costa**, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003); **Alwine v. Buzas**, 89 Fed. Appx. 196, 210 (10th Cir. Feb. 27, 2004).  Defendant denies that it considered plaintiff's gender, even in part, in making its decision.  The case therefore is properly analyzed under the **McDonnell Douglas** framework.

[10] **Notari** has been criticized by other federal courts, and Chief Judge Krieger of this district also has questioned its on-going vitality.  **See Elson v. Colorado Mental Health Institute at Pueblo**, 2011 WL 1103169 at *5 n.6 (D. Colo. March 24, 2011); **Kenfield v. Colorado Department of Public Health & Environment**, 837 F.Supp.2d 1232, 1236 n.2 (D. Colo. 2011), **as amended**, 2012 WL 3590758 (D. Colo. Aug. 20, 2012), **aff'd**, 557 Fed. Appx. 728 (10th Cir. Feb. 14, 2014).  However, the Tenth Circuit continues to cite **Notari**.  **See Kenfield**, 557 Fed. Appx. at 731.  Nevertheless, and regardless whether **Notari** is in fact moribund in light of subsequent Supreme Court decisions or otherwise, because I find that plaintiff cannot sustain his ultimate burden of proof even assuming that the elements of the prima facie case are established, I do not address this issue further.

Assuming the plaintiff has met his burden of establishing the elements of a prima facie case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment decision.  **See Texas Department of Community Affairs v. Burdine**, 450 U.S. 248, 254-55, 101 S.Ct. 1089, 1094-95, 67 L.Ed.2d 207 (1981); **EEOC v. Horizon/CMS Healthcare Corp.**, 220 F.3d 1184, 1191 (10th Cir. 2000).  Once the employer articulates such a facially nondiscriminatory or nonretaliatory reason, the presumption of discrimination raised by the prima facie case falls away, and the ultimate question becomes whether the plaintiff has met his burden to prove that the employer discriminated against him based on his sex.  **St. Mary's Honor Center v. Hicks**, 509 U.S. 502, 510-11, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993).

The plaintiff may meet this burden by showing that the employer's articulated reasons were merely a pretext for discrimination.  **Reeves v. Sanderson Plumbing Products, Inc.**, 530 U.S. 133, 143, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000).  **See also Morgan v. Hilti, Inc.**, 108 F.3d 1319, 1321 (10th Cir. 1997).  "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination."  **St. Mary's Honor Center**, 113 S.Ct. at 2749.  In addition, "[p]retext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."  **Morgan**, 108 F.3d at 1323.  On the other hand, "[m]ere

conjecture that the employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Id.*

In this case, even assuming *arguendo* that plaintiff can satisfy the elements of a prima facie case of reverse sex discrimination, defendant has articulated a legitimate, nondiscriminatory reason for his termination – his violation of company safety standards. In considering the issue whether the employer's facially neutral reason is pretextual, "[t]he relevant inquiry is not whether [the employer's] proffered reasons were wise, fair or correct, but whether [it] honestly believed those reasons and acted in good faith upon those beliefs." **Bullington v. United Air Lines, Inc**., 186 F.3d 1301, 1318 (10th Cir. 1999) (alterations in original). The court's proper role in analyzing the employer's decision is not to act as a "super personnel department." **See Turner v. Public Service Co. of Colorado**, 563 F.3d 1136, 1144 (10th Cir. 2009). An employer's business judgments, viewed in hindsight, may be hasty, unwise, unfair, or mistaken, but they are not subject to second-guessing by a court so long as they are made honestly and in good faith. **See Riggs v. AirTran Airways, Inc**., 497 F.3d 1108, 1118 -19 (10th Cir. 2007). Because plaintiff has failed to demonstrate any genuine dispute of material fact as to whether defendant's stated reason for his termination were pretextual under these standards, summary judgment is appropriate as to this claim.

The issue of pretext in this case is complicated by the fact that plaintiff does not contend that Mr. Brinson, who made the ultimate employment decision, himself harbored discriminatory bias against plaintiff because of his sex. Instead, plaintiff posits that Ms. Gannon's alleged gender bias can be imputed to Mr. Brinson under the so-called "cat's paw" doctrine. **See E.E.O.C. v. BCI Coca-Cola Bottling Co. of Los**

***Angeles***, 450 F.3d 476, 484 (10th Cir. 2006) (explaining that "cat's paw" "refers to a situation in which a biased subordinate, who lacks decisionmaking power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action."), ***cert. dismissed***, 127 S.Ct. 1931 (2007).[11]  To prevail under this theory, plaintiff must establish both that Ms. Gannon harbored gender-based bias against men and that her bias can be imputed to Mr. Brinson.[12]  ***Id.***

To impute a subordinate's bias to the decisionmaker under the cat's paw theory, "plaintiff must establish more than mere 'influence' or 'input' in the decisionmaking process.  Rather, the issue is whether the biased subordinate's discriminatory reports, recommendation, or other actions caused the adverse employment action."  ***Id.*** at 487.  Thus,

> an employer can avoid liability by conducting an independent investigation of the allegations against an employee.  In that event, the employer has taken care not to rely exclusively on the say-so of the biased subordinate, and the causal link is defeated.

***Id.*** at 488.  ***See also Lobato v. New Mexico Environment Department***, 733 F.3d 1283, 1294 (10th Cir. 2013) ("[A] 'necessary' element to a subordinate bias claim is the decisionmaker's uncritical 'reli[ance]' on facts provided by a biased supervisor.  If there is no such reliance – that is to say, if the employer independently verifies the facts and

---

[11] "The 'cat's paw' doctrine derives its name from a fable, made famous by La Fontaine, in which a monkey convinces an unwitting cat to pull chestnuts from a hot fire.  As the cat scoops the chestnuts from the fire one by one, burning his paw in the process, the monkey eagerly gobbles them up, leaving none left for the cat.  Today the term 'cat's-paw' refers to one used by another to accomplish his purposes."  ***BCI Coca-Cola Bottling Co.***, 450 F.3d at 484 (internal citations and quotation marks omitted).

[12] For purposes of resolving this motion only, I assume *arguendo* that the evidence is sufficient to demonstrate that Ms. Gannon harbored discriminatory, sex-based animus against men.

does not rely on the biased source – then there is no subordinate bias liability.") (citing ***Staub v. Proctor Hospital***, – U.S. – , 131 S.Ct. 1186, 1193, 179 L.Ed.2d 144 (2011)) (alternations in original).

Such is the case here. Mr. Brinson conducted an independent investigation into the knife incident prior to terminating plaintiff's employment. There is no evidence from which a reasonable jury could conclude that Ms. Gannon had any input into or influence over that decision. She never recommended that plaintiff be fired, nor even implied that plaintiff was responsible for placing the knife in the trash.[13]  ***Cf. BCI Coca-Cola Bottling Co.***, 450 F.3d at 485. Nor could a reasonable jury conclude that Ms. Gannon's January 2012 complaint about plaintiff's workplace behavior played a determinative role in Mr. Brinson's decision. While it is true that Mr. Brinson found plaintiff's failure to take responsibility for the knife incident consistent with this response to past disciplinary issues (***see* Def. Motion App.**, Exh. E at 7), which ostensibly included Ms. Gannon's complaint, plaintiff's personnel record contained a number of such instances going back to 2003 and involving different managers and coworkers at other King Soopers stores at which plaintiff had worked  (***see* Plf. Resp. App.**, Exh. 1 at 133-136; **Def. Motion App.**, Exh. E). As Ms. Gannon's complaint was but the latest in this not insubstantial disciplinary history[14] – one that did not even result in formal discipline – at best, it might be thought to have "influenced" the decision in some incremental way.  ***See BCI***

---

[13] Ms. Gannon did provide a statement in connection with discovering the knife, stating that it appeared to have been placed in the trash "intentionally." (**Def. Motion App.**, Exh. E at 12.) Nevertheless, Mr. Brinson dismissed this statement as "conjecture."  (***Id.***, Exh. C at 150.).

[14] Moreover, there is nothing in the record to indicate that Mr. Brinson was aware of Ms. Gannon's allegedly sexist remarks or bias against men, such as might have made him suspicious of her motives in filing a complaint.  (***See* Plf. Resp. App.**, Exh. 2 at 302-303.)

*Coca-Cola Bottling Co.*, 450 F.3d at 487.  Such proof, however, is insufficient to create a genuine dispute as to whether Mr. Brinson uncritically relied on Ms. Gannon's complaint in the manner contemplated by and necessary to invoke the cat's paw doctrine.  *See Lobato*, 733 F.3d at 1294.

Nor is the evidence sufficient to create a genuine dispute as to whether Mr. Brinson's investigation was adequate or otherwise suspect.  Mr. Brinson reviewed the surveillance video that showed the area of the prep sink and trash can during the relevant time periods.[15]  In the absence of any suggestion that the video affirmatively exonerates plaintiff, plaintiff's own interpretation of the events depicted therein is irrelevant.[16]  For even if a third party, viewing the video now, might conclude that Mr. Brinson ultimately was mistaken as to what the video showed, that fact alone is not sufficient to create a genuine dispute as to whether Mr. Brinson exercised honest business judgment in concluding that plaintiff was the person responsible, intentionally

---

[15] Although it is true that Mr. Brinson only viewed footage from one of three surveillance cameras in the area of the seafood department, there is no evidence controverting his testimony that neither of the other two cameras showed a vantage point of the prep sink or trash can, and thus were unhelpful.  (**Def. Motion App.**, Exh. C at 126-128.)

[16] Plaintiff suggests that Ms. Gannon and Ms. Rock were near the trash can "numerous" times prior to the discovery of the knife, and that Ms. Rock can be seen "lingering" over the can.  Plaintiff fails to tie these allegations to any particular time signature in the video, however, and just as "[j]udges are not like pigs, hunting for truffles buried in briefs," **Gross v. Burggraf Construction Co.**, 53 F.3d 1531, 1546 (10th Cir. 1995) (citation and internal quotation marks omitted), neither are they required to scour hours (in this case, some 13+ hours worth) of video footage in search of evidence supporting a party's arguments.

Nevertheless, having reviewed the video myself, I find nothing therein that substantiates these allegations.  By this court's own count, Ms. Gannon is seen on the video briefly just twice (at approximately 7:27 and 7:28 a.m.) prior to the time Ms. Rock called her over after discovering the knife, but not in proximity to the trash can on either occasion.  Although Ms. Rock does pass by the trash can several times in the more than two hours between her arrival at work just after 8:00 a.m., and her discovery of the knife at approximately 10:13 a.m., there is no instance that reasonably could be characterized as showing her "lingering" near or over the trash can.

or not, for putting the knife in the trash.[17]  **See Riggs**, 497 F.3d at1118 -19; **Bullington**, 186 F.3d at 1318.[18]  Accordingly, defendant is entitled to summary judgment on this claim.

Plaintiff also has alleged a claim of retaliation under Title VII.  To establish a prima facie case of retaliation, plaintiff must prove (1) that he engaged in protected opposition to discrimination; (2) that a reasonable employee would have found the employer's alleged retaliatory action to be materially adverse, meaning that the employer's action might dissuade a reasonable worker from making or supporting a charge of discrimination; and (3) that a causal connection exists between the protected activity and the materially adverse action.  **E.E.O.C. v. PVNF, L.L.C.**, 487 F.3d 790, 803 (10th Cir. 2007).  Although the employee's opposition need not specifically invoke Title VII or any particular form of words to constitute protected opposition, it "must convey to the employer . . . concern that the employer has engaged in a practice made unlawful by [Title VII]."  **Hinds v. Sprint/United Management Co.**, 523 F.3d 1187, 1203 (10th Cir. 2008).  This implicit but common-sense requirement simply recognizes that "an

---

[17] Even construed in the light most favorable to plaintiff, the video can be described, at best, as ambiguous.  It shows plaintiff cleaning the seafood case, counter, and prep sink area around 9:00 p.m. on March 15, 2012.  There is a *black-handled* knife sitting on the cutting board of the prep sink behind the counter.  At approximately 9:11 p.m., plaintiff is seen scooping up the knife and a wad of butcher paper underneath it.  After briefly washing down a cutting board, plaintiff throws the paper away in the trash can.  Although he does appear to remove the knife before doing so, it is not at all clear that this *black-handled* knife was the knife that was found in the trash the following morning, as in his written statement, plaintiff recalled removing a *white* knife from the cutting board, as well as several layers of paper.  Moreover, plaintiff could not affirmatively state that there had not been a knife in the paper he threw away.  (**Def. Motion App.**, Exh. F at 16.)

[18] Plaintiff also suggests that Ms. Villareal was never disciplined for leaving knives in soapy water in the prep sink, which also constituted a violation of company safety standards.  Plaintiff's complaints about these incidents, however, were made directly to Ms. Gannon, and there is no evidence contradicting Mr. Brinson's testimony that he was never made aware of such complaints.  (**See Def. Motion App.**, Exh. C at 62-63.)

employer cannot engage in unlawful retaliation if it does not know that the employee has opposed or is opposing a violation of Title VII." **Petersen v. Utah Department of Corrections**, 301 F.3d 1182, 1188 (10th Cir. 2002). **See also Galdieri-Ambrosini v. National Realty & Development Corp.**, 136 F.3d 276, 292 (2nd Cir. 1998) ("[I]mplicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII."). More specifically, generalized complaints of "favoritism" or unspecified "discriminatory" treatment which are not linked in some appreciable way to the employee's gender are insufficient to put the employer on notice that the employee is engaging in protected opposition to invidious discrimination. **See Robben v. Runyon**, 2000 WL 123421 at *4 (10th Cir. Feb. 1, 2000). **See also Martin v. Budget Rent–A–Car Systems Inc.**, 432 Fed. Appx. 407, 412 (5th Cir. July 14, 2011); **Tomanovich v. City of Indianapolis**, 457 F.3d 656, 663 (7th Cir. 2006); **Barber v. CSX Distribution Services**, 68 F.3d 694, 702 (3rd Cir. 1995); **Lee v. Potter**, 2008 WL 4449568 at *8 (N.D. Cal. Oct. 1, 2008), **aff'd**, 358 Fed. Appx. 966 (9th Cir. Dec. 16, 2009), **cert. denied**, 130 S.Ct. 3398 (2010).

So it is here. Plaintiff here complained to Mr. Brinson that Ms. Gannon had demonstrated "favoritism" toward Ms. Rock in foisting responsibility for cleaning the seafood case onto plaintiff and had trampled his seniority rights by denying plaintiff's request to take time off when Ms. Rock had previously requested those same days off.[19] (**See Plf. Resp. App.**, Exh. 2 at 242-243; **Def. Motion App.**, Exh. C at 45-49.) Plaintiff

---

[19] It also must be remembered that in both these instances, plaintiff's complaints were resolved in his favor.

also told Mr. Brinson (in response to the allegations made by Ms. Gannon in January 2012) that he was being unfairly "singled out" for complaint when others in the department engaged in similar behavior.  (*See* **Def. Motion App.**, Exh. C at 50-51.) There is no reasonable manner in which plaintiff's complaints could be construed as complaining of sex-based discrimination.  He therefore cannot satisfy his burden to establish a prima facie case of retaliation, and summary judgment is appropriate as to this claim as well.

## IV.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That **Defendant's Motion for Summary Judgment** [#29], filed September 19, 2014, is **GRANTED**;

2. That plaintiff's claims in this lawsuit are **DISMISSED WITH PREJUDICE**;

3. That the trial set to commence on **December 15, 2014**, is **VACATED**;

4. That judgment with prejudice **SHALL ENTER** on behalf of defendant, Dillon Companies dba King Soopers, Inc., against plaintiff, Timothy C. Jordan, on all claims for relief and causes of action asserted in this action; and

5. That defendant is **AWARDED** its costs, to be taxed by the clerk of the court in the time and manner specified by Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Dated November 20, 2014, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge